UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Cookie Dough Bliss Franchising, LLC, | Civ. No. 23-1552 (JWB/TNL) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |
| Feed Your Soul Minnesota, LLC, Gina Ehrisman, and John Ehrisman, | |
| Defendants. | |

Hannah Camilleri Hughes, Esq., and Jeremy D. Sosna, Esq., Littler Mendleson, counsel for Plaintiff.

Elliot R. Ginsburg, Esq., Garner, Ginsburg & Johnsen, P.A., counsel for Defendants.

Plaintiff Cookie Dough Bliss Franchising, LLC ("Cookie Dough") is a franchisor of edible cookie dough businesses, seeking a temporary restraining order and a preliminary injunction against its former franchisees. (Doc. No. 6.) Defendants Feed Your Soul Minnesota, LLC ("Feed Your Soul"), and its owners Gina Ehrisman, and John Ehrisman, operated a Minnesota business selling cookie dough treats under the name "Cookie Dough Bliss" pursuant to a Franchise Agreement between the parties. Although the parties dispute who soured their once sweet relationship, they agree the Franchise Agreement is now terminated. Cookie Dough asserts that it is entitled to enjoin Defendants from competing in the edible cookie dough business pursuant to a noncompetition clause in the Franchise Agreement. The Court held a hearing on June 20, 2023.

Plaintiff has not satisfied its burden to obtain preliminary injunctive relief, and its motion is denied.

## FACTUAL BACKGROUND

Cookie Dough is a North Carolina limited liability company that "owns and licenses a system of operating a retail business that sells edible cookie dough products under the commercial name and service mark Cookie Dough Bliss . . . [and] operates in eight states." (Doc. No. 1, Compl. ¶ 18.) Its nearest franchisee to Minnesota is approximately 1,000 miles away in Texas (Doc. No. 25, Defs.' Supp. Br. at 5). Cookie Dough "is not currently registered to sell franchises in the State of Minnesota" but "is in the process of registering its corporate entity to sell franchises there." (Doc. No. 28, Second Suppl. Decl. ¶ 3.)

Defendants Gina Ehrisman and John Ehrisman are Minnesota residents. (Doc. No. 1, Compl. ¶¶ 13-14.) Their business, Feed Your Soul, is a Minnesota limited liability company. (*Id*. at ¶12.)

On November 26, 2021, the parties entered into a Franchise Agreement granting Defendants a non-exclusive license to operate a Cookie Dough franchise using Cookie Dough's products, recipes, resources, and trademark. (Doc. No. 10, Ex. A.) Through the Franchise Agreement, Defendants operated a store in Lakeville, Minnesota, as well as a food truck bearing the Cookie Dough Bliss trade name and marks. (Doc. No. 1, Compl. ¶ 2.) Each side alleges that the other failed to perform under the Franchise Agreement, committing numerous material breaches that led to termination of the Franchise

Agreement. It is undisputed that the Franchise Agreement terminated on no later than May 29, 2023.

Plaintiff alleges that Defendants have violated the noncompetition provision of the Franchise Agreement by operating a competing business in the same territory. The Franchise Agreement contained a noncompetition provision prohibiting Defendants from being involved in any competitive business within a 30-mile radius of the franchise location for two years after the Franchise Agreement terminates.[1] (Doc. No. 10, Ex. A at 35–36.)

After termination, Defendants began operating their own cookie dough treats business called "UnBakeable." It is located at the same principal place of business as their former Cookie Dough franchise and uses the same Facebook website (albeit with a name change), the same (but rebranded) food truck, and a logo that Cookie Dough alleges is strikingly similar to its trademark's font and color. (Doc. No. 18, Suppl. Decl. ¶¶ 6–8.)

Plaintiff asserts that consumers have been confused by those similarities, citing to Facebook comments to support its position. (*Id*. at ¶¶ 8–9.) Plaintiff also points to various municipalities that have failed to update their websites to reflect that "UnBakeable," and not Cookie Dough, is a vendor for certain events, contending that the municipalities are also confused by the similarities between the two entities, attributable to UnBakeable.

---

[1]   The Franchise Agreement defines the "Location" as the Site Selection Area which is "all of the area within a 100[-]mile radius from Minneapolis, MN." (Doc. No. 10-1, Site Selection Add., Attach. A.) The noncompetition provision prohibits competing businesses "within a radius of thirty (30) miles of the Location." (*Id*., Attach. E.)

(Doc. No. 28, Second Suppl. Decl. ¶¶ 8–11.) Plaintiff further claims that Defendants are using its recipes and other trade secrets. (Doc. No. 18, Suppl. Decl. ¶ 14.)

In response, Defendants deny that they are using Cookie Dough's recipes or trademark and, at oral argument, also represented that they have not derived their recipes from Cookie Dough's recipes. Additionally, Defendants assert that they contacted the various municipalities to update the name of their business where websites mistakenly list Cookie Dough, and not Unbakeable, as a vendor for events. (Doc. No. 32, Suppl. Decl. ¶ 9.) Defendants further contend that Plaintiff is itself to blame for any of the confusion about which it complains.

On May 25, 2023, Cookie Dough initiated suit and simultaneously filed a motion for a temporary restraining order and preliminary injunction to enforce the noncompetition provision of the Franchise Agreement.[2] (Doc. No. 6.)

## DISCUSSION

Federal Rule of Civil Procedure 65 governs temporary restraining orders and preliminary injunctions. Because Defendants have responded, Plaintiff's request for

---

[2] Cookie Dough initially sought additional injunctive relief for trademark and trade secret violations, but now limits its request for injunctive relief to enforcement of the noncompetition provision in the Franchise Agreement. (Doc. No. 22, 6/2/2023 Letter.) The Court set a status call with the parties for May 31, 2023, and Defendants filed papers in opposition to Cookie Dough's motion before the call. (Doc. Nos. 15–17, 19; *see also* Doc. No. 20, Minute Entry.) The Court ordered the parties to meet and confer and ordered supplemental briefing. (Doc. Nos. 21, 23.) A hearing was then held on the matter on June 20, 2023. (Doc. No. 35.)

expedited relief is construed as a request for a preliminary injunction under Rule 65(b) rather than a temporary restraining order under Rule 65(a).

**I.      Legal Standard**

A preliminary injunction is an "extraordinary remedy." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003). "In deciding whether to issue a preliminary injunction, the district court considers four factors: '(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that [the] movant will succeed on the merits; and (4) the public interest.'" *Sleep No. Corp. v. Young*, 33 F.4th 1012, 1016 (8th Cir. 2022) (quoting *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc)). The core question is whether the equities "so favor[] the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Dataphase*, 640 F.2d at 113 (footnote omitted). "The burden of establishing the four factors lies with the party seeking injunctive relief." *CPI Card Grp., Inc. v. Dwyer*, 294 F. Supp. 3d 791, 807 (D. Minn. 2018). This inquiry requires consideration of each factor, and no single factor is determinative. *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1179 (8th Cir. 1998).

**II.     The *Dataphase* Factors**

**A.      Threat of Irreparable Harm**

Irreparable harm "occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). "The movant

5

must show that 'irreparable injury is *likely* in the absence of an injunction, not merely a 'possibility' of irreparable harm before a decision on the merits can be rendered." *Tumey v. Mycroft AI, Inc.*, 27 F.4th 657, 665 (8th Cir. 2022) (quoting *Winter*, 555 U.S. at 20). "Failure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction." *Watkins*, 346 F.3d at 844; *see also Gamble v. Minn. State Indus.*, Civ. No. 16-2720 (JRT/KMM), 2017 WL 6611570, at *2 (D. Minn. Dec. 1, 2017) (collecting cases).

      Cookie Dough alleges that Defendants are irreparably harming its goodwill and brand through (1) consumer confusion, (2) frustrating its ability to refranchise the area because prospective franchisees will have direct competition in the area, and (3) encouraging other franchisees to disregard the terms of their franchise agreements. None of these allegations supports a finding of irreparable harm here.

      First, Plaintiff has not established consumer confusion and subsequent harm. To the extent there is any confusion, the record includes evidence that Plaintiff may be contributing to the very confusion about which it complains. Defendants point out that as late as two weeks post termination, Cookie Dough's own website misrepresented that it still has a "mobile concession trailer" in Minnesota, when it does not. (Doc. No. 33-1, Suppl. Decl., Ex. 1.) This misrepresentation possibly leads to consumer confusion because while Plaintiff does not in fact continue to have a mobile concession trailer selling cookie dough treats in Minnesota, Defendants do.

      Second, Plaintiff is presently unable to sell franchises in Minnesota. Because Cookie Dough cannot currently sell franchises here, any potential harm related to re-

6

franchising is uncertain, speculative, and not immediate.[3] *See Iowa Utilities Bd. v. F.C.C.*, 109 F.3d 418, 425 (8th Cir. 1996) ("[A] party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief."); *Midwest Sign & Screen Printing Supply Co. v. Dalpe*, 386 F. Supp. 3d 1037, 1055 (D. Minn. 2019) ("A plaintiff must show more than a future risk of irreparable harm."). It is reasonable that Cookie Dough's current claim on its website to still be operating a mobile concession trailer selling cookie dough treats in Minnesota in the same region would be its greatest impediment to re-franchising that region, even if it had the proper Minnesota registration to sell franchises.

And third, it is similarly speculative to conclude that other franchisees will disregard the terms of their agreements if the Court denies Cookie Dough's motion for injunctive relief. *See Mainstream Fashions Franchising, Inc. v. All These Things, LLC*, 453 F. Supp. 3d 1167, 1202 (D. Minn. 2020) ("Mainstream's speculation that other franchisees will follow Defendants' example and abandon their franchises is just that—speculation—and cannot support a finding, at this time, of irreparable harm."). This speculation fails to show irreparable harm.

Finally, even if Plaintiff could show an immediate harm, it must still show that money damages are inadequate to compensate for that harm. *Novus Franchising, Inc. v.*

---

[3] Although Cookie Dough asserts that Defendants' operation "unfairly diverts customers and business away from Plaintiff" (Doc. No. 26 at 8), Cookie Dough cannot currently sell franchises in the state of Minnesota and its closest franchisee is approximately 1,000 miles away.

*Dawson*, 725 F.3d 885, 895 (8th Cir. 2013). Here, the Franchise Agreement provides for $100,000 in liquidated damages for each breach of the noncompetition provision.[4] (Doc. No. 10, Ex. A, Attach. E § 1.8.)

Plaintiff has failed to show irreparable harm, an independently sufficient reason to deny injunctive relief.

### B.     Plaintiff's Likelihood of Success on the Merits

Even though Plaintiff has not shown irreparable harm, the remaining three factors will be considered, starting with Plaintiff's likelihood of success on the merits. "While no single factor is determinative, the probability of success factor is the most significant." *Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013). An injunction "cannot issue if there is no chance of success on the merits." *Mid–Am. Real Estate Co. v. Iowa Realty Co.*, 406 F.3d 969, 972 (8th Cir. 2005); *see also McMahon v. Delta Air Lines, Inc.*, 830 F. Supp. 2d 674, 688 (D. Minn. 2011) ("If a party's likelihood of succeeding on the merits is sufficiently low, a court may deny a preliminary injunction even if the other three factors—irreparable harm, balance of harms, and the public interest—weigh in the party's favor.").

---

[4]     Under Minnesota law, "liquidated damages are generally appropriate where the actual damages resulting from a breach of contract cannot be ascertained or measured. For this reason, liquidated damages are generally appropriate where there is a risk of speculative damages such as lost profits or harm to corporate goodwill." *Maslowski v. Prospect Funding Partners LLC*, 978 N.W.2d 447, 456 (Minn. App. 2022) (citations omitted), *review granted* (Sept. 28, 2022). But liquidated–damages clauses are unenforceable when the actual damages are "susceptible to definite measurement" and the liquidated damages are "greatly disproportionate." *Id.*

Key to Cookie Dough's success on the merits is whether the Franchise Agreement was breached, whether the noncompete provision in the Franchise Agreement is enforceable, and whether Cookie Dough's conduct excuses compliance.

Under Minnesota law, noncompetition covenants are disfavored but still enforceable so long as they serve a legitimate purpose and are not broader than necessary to protect that purpose. *Medtronic, Inc. v. Advanced Bionics Corp.*, 630 N.W.2d 438, 456 (Minn. App. 2001).[5] Generally, a franchisor has a legitimate interest in "protecting itself from a former franchisee operating in the same market," its ability to resell or develop a new business in that area, and in protecting its intellectual property. *In re EllDan Corp.*, No. 22-31870, 2023 WL 3394917, at *3 (Bankr. D. Minn. May 11, 2023). To be enforceable, noncompetition covenants must be reasonable in geographic scope and duration. *Id*. at *4.

Here, circumstances regarding the purpose and scope of the noncompetition agreement weigh against the Plaintiff. For example, it is unclear whether the noncompete provision serves a legitimate purpose when Cookie Dough is not registered to sell franchises or otherwise compete in Minnesota. Additionally, it is not likely that the geographic scope of the noncompetition provision is reasonable given that Plaintiff's own

---

[5] Recent legislative changes to noncompetition agreement enforceability in Minnesota do not apply to the Franchise Agreement because (1) the Franchise Agreement was executed before the June 1, 2023 effective date of the legislation, and (2) the legislative changes include an exception for agreements "designed to protect trade secrets or confidential information." 2023 Minn. Laws Ch. 53, art. 6, § 38 (to be codified at Minn. Stat. § 181.988 (2023)).

cited authority supports geographic zones of ten miles or less, with an outlier of a 20-mile radius.[6] Third, the parties dispute that Defendants have been using Cookie Dough's recipes, whether there has been any consumer confusion, and whether Cookie Dough has contributed to any such confusion. Given the factual discrepancies, it is not, at this juncture, possible to determine if the Franchise Agreement was breached or by whom.

Cookie Dough is not yet able to establish that it is likely to succeed on the merits. Therefore, this factor does not weigh in favor of granting Cookie Dough's motion.

### C. Balance of Harms

The balance of harms factor "involves assessing the harm the movant would suffer absent an injunction, as well as the harm the other parties would experience if the injunction issued." *Prairie Field Servs., LLC v. Welsh*, 497 F. Supp. 3d 381, 404 (D. Minn. 2020). It is undisputed that granting the preliminary injunction would put Defendants out of business, ending a family's primary source of income and causing the owners to default on a $230,000 loan. (*See* Doc. No. 16, Ehrisman Decl. ¶¶ 16–17.) By contrast, in denying the request for preliminary injunction, Cookie Dough would potentially risk consumer confusion in a market where it cannot currently operate and may face an additional challenge in refranchising the area in the event it successfully registers to sell franchises in Minnesota.

Because any harm inflicted on Plaintiff is uncertain while the harm to Defendants

---

[6] The noncompete geographic area that Plaintiff seeks to enforce is effectively a 130-mile radius around Minneapolis, Minnesota. The noncompete agreement prohibits competitive businesses "within a radius of thirty (30) miles of the Location," and "Location" is defined as the area within 100 miles of Minneapolis, Minnesota.

is definite and significant, the balance of harms weighs in favor of denying the injunction.

### D. Public Interest

The final factor to consider is public interest. Public interest supports both unrestrained competition and the upholding of contracts, two public interests confront each other similarly in the parties' respective positions. *See Life Time Fitness, Inc. v. DeCelles*, Civ. No. 12-420, 2012 WL 639453, at *4 (D. Minn. Feb. 28, 2012). This factor, therefore, is a neutral one.

After considering Cookie Dough's motion and the record evidence, three of the four *Dataphase* factors weigh against granting a preliminary injunction and the remaining factor is neutral. Cookie Dough's motion therefore is denied.

### ORDER

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction in Aid of Arbitration (Doc. No. 6) is **DENIED**.

Date: August 1, 2023

*s/ Jerry W. Blackwell*
JERRY W. BLACKWELL
United States District Judge